UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RAYQUAN CALLAHAN,

                Plaintiff,

  -against-

THE CITY OF NEW YORK, POLICE OFFICERS
DANIEL BERARDI (Shield 7962), STEVEN FRANZEL
(Shield 26765), DEREK SAMBOLIN (Shield 6906),
and POLICE OFFICERS AND SUPERVISORY
POLICE OFFICERS JOHN DOES 1-5,

                Defendants.
------------------------------------------------------------------------X

13 CV 3607 (SLT) (RER)

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

      Plaintiff **RAYQUAN CALLAHAN**, by his attorney, Joel Berger, Esq., for his complaint alleges, upon information and belief, as follows:

### NATURE OF THE ACTION

      1.    This is an action to recover money damages arising out of the violation of plaintiff's rights under the Constitution and laws of the United States and the State of New York, including a false arrest and false imprisonment by employees of the New York City Police Department (NYPD) and a second false arrest and imprisonment in retaliation against plaintiff for having filed this lawsuit.

### JURISDICTION AND VENUE

      2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

      3.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343.

      4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b).

### PENDENT JURISDICTION

      5.    This Court also has jurisdiction over plaintiff's state law claims, pursuant to its

pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

6. On May 14, 2013, a verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e.

7. At least thirty days have elapsed since the service of the Notice of Claim, and adjustment or payment of the claims has been neglected or refused by defendant City of New York.

8. This action was commenced within one year and ninety days after the happening of the events upon which the claims are based.

### *JURY DEMAND*

9. Plaintiff demands trial by jury in this action.

### *PARTIES*

10. Plaintiff **RAYQUAN CALLAHAN**, age 19, is an African-American male who is a citizen of the United States and a resident of the State of New York. At the time of the first arrest he was a senior at Brooklyn Collegiate High School, and he graduated on June 26, 2013. He has been accepted to attend college at Ohio State University. Despite being a full-time high school student he also worked eight-hour shifts, seven days per week at a local McDonalds and he is still employed there full-time. He has never been convicted of any offense.

11. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the NYPD, a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

12. At all times relevant herein, defendants Daniel Berardi (shield 7962), Steven Franzel (Shield 26765), and Derek Sambolin (Shield 6906) were police officers employed by the NYPD,


assigned to an anticrime unit of the 73rd Precinct in Brooklyn, NY.

13. At all times relevant herein, defendants John Does 1-5 were police officers and supervisory police officers also employed by the NYPD and assigned to the 73rd Precinct in Brooklyn, NY. Plaintiff does not know the names or shield numbers of John Does 1-5 at this time.

14. At all times relevant herein, defendants were acting as agents, servants and employees of defendant City of New York and the NYPD.

15. At all times relevant herein, all defendants were all acting under color of state law.

## FACTS

### THE FIRST ARREST

16. On Sunday, February 24, 2013, at approximately 2:50 A.M., in the vicinity of Eastern Parkway and Thomas Boyland Street in Brooklyn, New York, plaintiff **RAYQUAN CALLAHAN** was arrested by New York City Police Officers.

17. Plaintiff was imprisoned for more than 15 hours in police custody, at the 73rd police precinct and then at Brooklyn Central Booking.

18. Plaintiff was released from Brooklyn Central Booking at approximately 8:00 P.M. on February 24, 2013, without having to appear before a Judge.

19. Plaintiff was released because the Kings County District Attorney's office declined to prosecute him. A copy of the Declined Prosecution Report, received from the Kings County District Attorney's Office, is annexed as Exhibit A.

20. On the date of the arrest plaintiff had attended a Saturday night party in the Bedford Stuyvesant section of Brooklyn, and was returning by subway with two friends to his home in the Brownsville section of Brooklyn.

21. Approximately two blocks after exiting the Rockaway Avenue station of the C train, plaintiff and his friends happened to come across an acquaintance, a 16 year-old juvenile whose first name is Jevonte.

22. Less than 5 minutes after they encountered Jevonte, plaintiff and his friends as well as Jevonte were stopped, questioned and frisked by several plainclothes officers from an unmarked car, including defendants Berardi, Franzel and Sambolin.

23. Plaintiff and his two friends were not found to be in possession of contraband of any kind.

24. Plaintiff and his two friends were not detained any further or directed by any police officer to remain in place.

25. Berardi noticed that the juvenile Jevonte was holding the midsection of his jacket as if he was secreting an object there. The object itself was not visible to the Berardi, Franzel, Sambolin, plaintiff, plaintiff's two friends, or anyone else.

26. At this time Jevonte chose to run away from the police and was chased by Berardi.

27. Plaintiff and his friends were determined to steer clear of any involvement with whatever had caused Jevonte to flee, and therefore left the scene while Berardi was chasing Jevonte. Defendant Sambolin observed their departure and reported it to Berardi.

28. Shortly thereafter Berardi observed Jevonte throw a firearm underneath a parked vehicle on Dean Street. Berardi apprehended Jevonte and recovered the firearm.

29. Despite the fact that Jevonte's possession of a firearm had not been visible to plaintiff and his friends and that obviously none of them possessed or were in constructive possession of the firearm, Berardi placed a radio call directing that they be arrested. They were apprehended by police,

4

and Berardi identified them as the perpetrators he wanted arrested. Franzel and Sambolin participated in the arrests. Berardi was named as the arresting officer.

30. Plaintiff and his friends were all tightly handcuffed behind their backs and taken to the 73rd precinct.

31. Plaintiff was interrogated by defendants at the 73rd precinct concerning gang activity in his neighborhood.

32. Plaintiff is not and never has been a member of any gang, and denied any gang affiliation in response to the interrogation. He was a full-time student high school student who also works full-time, he has since graduated and been accepted to attend college, and he has never been convicted of any criminal offense.

33. Berardi had no probable cause to arrest plaintiff and no probable cause to charge him with any offense.

34. Berardi nonetheless charged plaintiff with criminal possession of a weapon in a public place (Penal Law § 265.03 and 240.00 (1), a Class C felony), even though by Berardi's own subsequent admission to the Kings County District Attorney's office plaintiff never possessed the firearm and in fact it indisputably was possessed solely by the juvenile Jevonte and by no one else and was not even visible to Berardi, Franzel, Sambolin, plaintiff, plaintiff's two friends or anyone else. The arrest number was # K13617145.

35. In an apparent effort to justify the charge and claim that he had probable cause to arrest, Berardi falsely stated to the Kings County District Attorney's office, without any basis whatsoever, that plaintiff was a gang member.

36. One or more NYPD supervisors had to approve the arrest and detention of plaintiff,

and the false charge against him. Defendant Berardi necessarily obtained the approval(s) from his supervisor(s), including one or more of the defendants John Does 1-5.

37. Plaintiff was transported in handcuffs to Brooklyn Central Booking, where he was placed in a filthy holding cell with numerous other arrestees.

38. Plaintiff had never been in such a situation before, and was extremely shaken and frightened by his treatment.

39. At Brooklyn Central Booking the Kings County District Attorney's office correctly determined that there was no basis to charge plaintiff (or his friends), who had possessed no contraband, with any offense. Prosecution was declined as to plaintiff and the other innocent arrestees.

40. The determination to decline prosecution was made by Assistant District Attorney Alana Tierney in consultation with Executive Assistant District Attorney Ed Carroll of the Gang Bureau.

41. Plaintiff was released without having to go before a judge.

42. However, plaintiff was not released from Brooklyn Central Booking until approximately 8:00 P.M. on Monday, February 25, 2013. He had been imprisoned for more than 15 hours for no lawful reason whatsoever.

## *THE RETALIATORY ARREST*

43. The individual defendants and defendant city of New York Defendants were served with the Summons and Complaint in this action on June 26, 2013, the day the action was filed.

44. The individual defendants attempted to evade service, as the desk officer at the 73rd precinct and even a sergeant absolutely refused to accept service for them, in violation of Patrol

Guide PG 211-21 § 1 (Desk Officer must "Accept service of legal papers for member assigned to the command"). Even after being ordered by David Goldfarb, Esq., of the NYPD's Legal Bureau to accept service, and even after having told Mr. Goldfarb that they would accept service, service was declined. After approximately an hour's delay, a Detective O'Donnell of the NYPD's Legal Bureau finally persuaded a senior official of the precinct that service had to be accepted, and an Officer Stephen Kuo (Shield 23023) was sent to the desk and accepted service.

45. On Thursday, July 4, 2013, at approximately 4:30-5:00 P.M., in the vicinity of Pitkin Avenue and Grafton Streets, defendant Birardi retaliated against plaintiff for filing this action by arresting him on a fabricated charge of riding a bicycle on the sidewalk.

46. Defendant Birardi explicitly told plaintiff that he was aware of this lawsuit, proclaimed to him and other officers that "this is the guy who's suing us" and stated in sum and substance, "I don't care, the money isn't coming out of my pocket."

47. Plaintiff was returning home by bicycle from working a holiday day shift at the McDonald's where he is employed, and had stopped to cash his paycheck at a check cashing establishment where he is registered, approximately a block from his home.

48. Plaintiff left his bicycle on the sidewalk, which is perfectly legal.

49. At no time did plaintiff ride the bicycle on the sidewalk.

50. Defendant Berardi nonetheless arrested plaintiff on the fabricated charge of riding a bicycle on the sidewalk.

51. Instead of simply issuing a summons defendant Berardi took plaintiff to the 73rd police precinct, arriving at approximately 5:00-5:30 P.M. on July 4, 2013.

52. A captain at the 73rd precinct asked plaintiff for identification, to which plaintiff

7

responded that he didn't have it on him because he is registered at the check cashing establishment but that his mother would bring his identification to the precinct.

53. Within approximately 30 minutes plaintiff's mother, Shimara Callahan, arrived at the precinct with plaintiff's identification.

54. Despite the appearance of plaintiff's mother bearing plaintiff's identification, he remained imprisoned at the 73rd precinct until approximately 3:00 P.M. on Friday, July 5, 2013.

55. Despite the presentation of proper identification and despite the fact that the only alleged offense was riding a bicycle on the sidewalk, defendant Berardi, with the approval of one or more supervisors -- John Doe defendants herein -- had plaintiff taken to Brooklyn Central Booking.

56. Plaintiff remained at Brooklyn Central Booking until approximately 10:30-11:00 P.M. on Friday, July 5, 2013.

57. When plaintiff eventually got to see a judge, he was advised that he should merely have been given a ticket and should not have been brought to Brooklyn Central Booking to begin with. The judge dismissed the charge pursuant to CPL § 170.55 (Adjournment in Contemplation of Dismissal – "ACD"), and plaintiff was released.

58. The criminal defense attorney on July 5 was Elizabeth Calcaterra of the Legal Aid Society, (718) 243-6895. Ms. Calcaterra confirms that the charge was merely riding a bicycle on the sidewalk and that the disposition was an ACD. The case was Docket No. 2013KN051183.

59. Plaintiff was in custody for more than 30 hours as a result of a blatantly illegal and retaliatory arrest.

### *FIRST CLAIM FOR RELIEF*

60. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-59.

61. Defendants, by their conduct toward plaintiff alleged herein, violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### *SECOND CLAIM FOR RELIEF*

62. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-59 and 61.

63. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers, detectives and supervisory officers.

64. The failure of the City of New York and the NYPD properly to select, train, supervise, promote and discipline police officers, detectives and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

65. The official policies, practices and customs of the City of New York and the NYPD, alleged in ¶¶ 1-59, 61 and 63-64 violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

### *THIRD CLAIM FOR RELIEF*

66. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-59, 61, and 63-65.

67. The conduct toward plaintiff alleged herein constituted false arrest, false imprisonment, malicious prosecution, the unnecessary and excessive use of force, and employee

9

negligence.

68. The conduct toward plaintiff alleged herein subjected this man with no prior arrest record to trauma, shock, debasement, shame, fright, fear, humiliation, embarrassment, loss of freedom, harassment, and physical, psychological and emotional injury, trauma, pain, and suffering.

## *FOURTH CLAIM FOR RELIEF*

69. Plaintiff repeats and realleges the allegations contained in ¶¶ 1-59, 61, 63-65, and 67-68.

70. At all times relevant herein, the individual defendants were on duty and were acting within the scope of their employment as agents, servants and employees of the City of New York, which is therefore responsible for their conduct under common law, state law and Article I, §§ 1, 5, 6, 11 and 12 of the Constitution of the State of New York.

## *PRAYER FOR RELIEF*

**WHEREFORE**, Plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against all individual defendants, jointly and severally;

(c) Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: New York, New York
July 12, 2013

/s/ Joel Berger
**JOEL BERGER**

360 Lexington Avenue, 16th Fl.
New York, New York 10017
(212) 687-1425

**ATTORNEY FOR PLAINTIFF**

TO: **VICKI ZGODNY, ESQ.**
Assistant Corporation Counsel
NYC Law Department
100 Church Street, Rm. 3-186
New York, NY 10007
(212) 356-2662
(by hand and email vzgodny@law.nyc.gov )

## DECLARATION OF SERVICE

STATE OF NEW YORK   )
                    ) SS.:
COUNTY OF NEW YORK )

  **JOEL BERGER** declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

  1. I am the attorney for the plaintiff in the above-captioned action. I was admitted to practice before the courts of the State of New York on December 23, 1968, and before the United States District Court for the Eastern District of New York on May 19, 1970.

  2. On July 12, 2013, I personally served the within Plaintiff's First Amended Complaint upon Vicki Zgodny, Esq., Esq., Assistant Corporation Counsel, by delivering a true and correct copy to the service desk of the New York City Law Department, 100 Church Street, New York, NY 10007. Ms. Zgodny has not yet entered a Notice of Appearance, but advised the undersigned by telephone on July 11, 2013, that she has been assigned to the case. A courtesy copy was also emailed to Ms. Zgodny on July 12, at the email address supplied by her, vzgodny@law.nyc.gov.

Dated: New York, New York
    July 12, 2013

                       _____
                         **JOEL BERGER**